Good morning, Your Honors. May it please the Court, my name is Jeremy Gutman and I represent extraordinary combination of physical and medical conditions that Mr. Shue had that put him at severe risk for complications that could be life-threatening or very damaging and that required ongoing specialized medical care. The sentence to a term of incarceration for a violation of supervised release here was unreasonable. I want to begin by addressing the nature of this Court's review because there's a suggestion in the government's brief that reversal would require a finding of plain error. But the government does not, the cases the government cites refer to that being the mode of review for an unpreserved claim of procedural error. Our argument is presented as it's a single sub-point addressing procedural and substantive. Look, here's my problem. Substantive is very hard for you to win to say that somebody has done that. The principal argument that I think could be made is the procedural one that the Court did not address the question of whether this man's myasthemia was grave enough so that he would have certain types of things which could not be taken care of in the Court. And that the Court should have addressed that before it decided. Now that's a procedural question. A question of procedural error. And I think it's an important one. But the question then, if it is procedural, is this subject to plain error or the other? I don't think the substantive one, frankly, on our cases goes anywhere. But the question of procedure is an important one here. Well, I don't think the line is so clear. I think that the procedural concerns, and we agree with Your Honor that that is a significant concern here. But I believe that can be addressed under the rubric of substantive unreasonableness as well. I wrote Cabrera, and I'm very keen on keeping the two things separate. Because unless you have cured the procedure, you don't really know about the substance. Well, what I would say is that under substantive, the analysis for substantive reasonableness, the issue or one of the issues the Court has to look at is whether a factor relied on by the Court can bear the weight assigned to it. And here, obviously, we're saying that under the particular circumstances here, the most salient factor is the need to provide necessary medical care, as the statute requires the Court to consider. And on the other side of that, basically, the Court said it would be an undeserved reward for me to allow Mr. Hsu to have a sentence of home detention. And our argument is that in the face of this record, and on a record that doesn't address the capacity of the BOP to deal with someone with these particular needs, and with- Well, let's stop there. If we think of it as a substantive claim, what is in the record tells us that the Court did not give sufficient consideration-I mean, the Court considered your client's condition. But if we're going to conclude she gave improper weight to his lack of remorse and didn't give sufficient weight to the need for medical treatment in the BOP, what would be the basis for that conclusion here? Because I think neither side really got very specific. And this may go to my colleague's comment about, is this really a procedural claim? We needed more in the record. Well, the only response that the Court gave to the concerns that were raised about the ability of the BOP to address these concerns and to respond-because there was evidence in the record about a history of an emergency situation where Mr. Hsu stopped breathing and had to be put on a ventilator and came very close to dying. But did the Court address that? Did the Court ask whether this was a myasthemia case that was under control, in which case nothing much, or one that was not under control and therefore likely to have these things, and whether that would be taken care of before addressing what would be the particular thing? That's my procedural question, of whether the Court addressed that and whether that is serious enough so that it would be plain error in the sense of all of the requirements of plain error. That particular question was not focused on specifically, but the record included a letter from a doctor saying that there had been another situation that required emergency hospitalization since Mr. Hsu was released, and that he remained highly symptomatic and required ongoing medication, including medications that were administered not self-administered. And the only response by the Court to this issue was to say that he'll be designated to a facility that will be obligated to address these concerns. But the issue was not whether the BOP would be obligated to provide care to an inmate. It's whether it has the capacity, whether they have the staffing and medical staff and other staff that would respond in an emergency. And the myasthenia gravis, while it's the most serious, is only one of a host of medical conditions in this particular case, and it included lumbar stenosis that made it difficult for him to walk and caused him severe back pain. And there was a reporting of the myasthenia gravis leading to dizziness and difficulty walking. So your argument is that there was enough put in the record about your client's medical condition, focusing on the procedure now, that enough to trigger an obligation on the district court's part to inquire further as to the BOP's ability to provide adequate medical treatment, and that the failure to do so was of sufficient importance that it was plain error? Well, that is correct, and I do think the failure to address that could be considered plain error. But I would also say that on a record that does not include addressing that issue, this court is not in a position to say that substantively this was a reasonable sentence. Thank you. Good morning, your honors. May it please the court. I'm Assistant United States Attorney Michael Maffei, and I represented the government in this matter in the district court. Here, the judgment of the district court, a judging shoe in violation of his conditions of supervised release should be affirmed in all respects with the limited exception, as the parties noted in their papers, for an error in the judgment. The balance of Mr. Shoe's claims that the district court's sentence was both procedurally and substantively unreasonable is without merit. Here, while violations of supervised release, like all sentences generally, are reviewed for abuse of discretion, the government's position is that the defendant did not object in any way to the procedures or analysis employed by the district court, and accordingly the procedural aspect of his claim should be reviewed for plain error. And there is no plain error in regards to the procedural reasonableness of the sentence, nor is there any error. Why isn't there plain error? Why shouldn't it be perfectly obvious to a court, before deciding that somebody who is, you know, on bail and all sorts of other things of that sort, before being put back in jail for this, that really, whether he has really severe medical problems, because, you know, myasthenia could be one thing or it could be another, leave aside the others, and that that can be treated, and that if a court finds that it can be treated, then substantively it can. But if it can't, it should explain why it still is okay. Why isn't that plain, and why isn't it something that does go to ultimate justice, because it goes to whether somebody lives or dies, so that despite the difficulty of plain error, why can't we say that this is a procedural error that violates plain error, which would cause us to send it back, the court could then look, could then end up doing exactly the same thing, or it might not. I understand your Honor's point completely, but I think here on the specific facts before the district court, the district court was very uniquely situated that this would not be plain error. Judge Seibert not only sat on the defendant's trial in 1996, so having over 25, essentially 25 years of familiarity with the defendant, but saw him at the 100% your Honor, well understood, but addressing specifically, it wasn't just that 25 years, but saw him in 2020, and again, multiple times in 2022, when this was raised again and again. And I think that the district court, to your Honor's point, actually assumed it was sort of the worst case scenario, because in the record, the district court specifically said on multiple occasions that it's very serious. At the bail hearing, the district court went so far as to say, I understand that the circumstances of incarceration could be extremely difficult. That's at Government Appendix 19. So the district court, I think, assumed sort of that worst case medical scenario. Did it look to whether the jail could look after such a situation? That was going to bring me to my second point. And what was also before the district court on the specific issue of the defendant's medical conditions was that he had experienced this specific, the myasthenia gravis specifically, from 2009 to 2015, while he was in the custody of the Bureau of Prisons. And the district court also heard that he had similarly serious attacks from the defendant when he addressed the court at sentencing outside of the prison setting. So it wasn't that this was something specifically geared to the prison is unsuited to care for his condition. It was just generally that his condition is so serious that this could happen at any time. Indeed, for six years, he dealt with this condition while incarcerated on the original sentence. And the district court was aware of that. Mr. Hsu himself, during argument to the court at sentencing, reiterated that. So I think the court was well aware of— How harmful is it, given that we have to send it back for a trivial matter anyway, when we send it back to say to the district court, but look specifically to that and tell us explicitly that you have looked to that? Well, again, I think that sort of presumes, contrary to what the record says, that the district court didn't take that consideration. It just says we're in doubt. Right. But the district court did say it seems to assume the worst-case scenario. And, Your Honor, at the bail hearing specifically, when it acknowledged initially how difficult incarceration— it believed incarceration could be for Mr. Hsu based upon his medical conditions, it said, understanding that, I intend to give you nine months, and I'm telling you that because I know this could be difficult. Essentially, I understand you may need time to prepare to go into the BOP, given your medical conditions. And then jumping ahead to the time of sentence after having seen the defendant's sentencing submissions, which contained ample information about his conditions and hearing argument, the district court then changed its position from where it was a few months earlier and said, OK, I don't want to give you the nine months. I want to give you six months because there has to be some accountability for the criminal conduct here. And I think the district court was well aware or assumed, sort of as Your Honor said, what could be the worst-case scenario that the BOP may not be the best place to treat his condition, but does his condition render him essentially, as counsel sort of suggests in the substantive piece of his argument, as someone who cannot be put in jail under any circumstances. And I think that is what the district court actually weighed, and the record shows here, that the district court considered, well, the BOP, defense counsel sort of argues, and I think correctly, that there wasn't a lot of information fleshed out in the record about that. But that's asking to assume that the BOP can't manage his condition at all, when in fact he had that condition in the Bureau of Prisons for six years during his prior sentence. And again, I think the district court was well aware of that when it imposed the sentence, and obviously with the consideration of how to change. Did the district court look to what his state of myasthemia was now as against the earlier one when he had these attacks? Because myasthemia is something that can be completely controlled and not do anything for the longest of time, or it can be something which... I think, Your Honor, to answer that, the district court specifically said that it's taking Mr. Hsu and essentially counsel at his word as to how serious it was. That's at Appellant's Appendix, page 57, I believe, says that it doesn't doubt that, but it's weighing it against the other factors that the district court is considering specific to Mr. Hsu, that being his criminal history, his recidivism, and what the district court acknowledged was sort of a lack of acceptance of responsibility in an attempt to shift blame, which I think that sort of dovetails with the substantive portion of the argument. But I don't believe it was plain error because the district court seemed to assume sort of the worst-case scenario when imposing sentence as far as the medical piece was concerned, and then went through the requisite procedural balancing of that against the other 3553A factors. So, again, at the time of sentence, it was not an issue that the court touched for the very first time. It had seen it at the bail hearing. It had dealt with it over the course of years, essentially. So I think the district court's procedural imposition of sentence here did appropriately consider 3553A to D as far as the defendant's medical condition. As far as the substantive reasonableness of the sentence overall, assuming the procedural reasonableness is appropriate and found by your honors, which I believe it is, the substance of the sentence here was clearly not an abuse of discretion. The substantive sentence was at the low end of an unchallenged, agreed-upon guidelines range, which obviously doesn't create a presumption of reasonableness, but certainly shows it's sort of within the realm of what can be an appropriate sentence. But the district court was sentencing someone who was now back before it on a violation of supervised release imposed in a serious drug felony case for committing yet another drug felony. And not only was it considering the defendant's recidivism and its well-documented prior history of the defendant, I think the defendant himself sort of said, Judge, we go way back. We've known each other a long time. So it was clear that the judge who had presided over the trial, the 2015 resentencing, the 2020 VOSR proceedings, and then the 2022 sentencing on the VOSR was well familiar with his history and characteristics. And the need, I think the way the court phrased it was to show some respect for the issues here, was clear that this was someone who continued to violate the law in a serious way after being on supervised release for very serious crimes and did clearly balance that against what it considered to be, I think, certainly a medical hardship that incarceration may cause. Highlighting, again, the judge's consideration for the medical situation and also the reasonableness of the sentence, the court said that it was considering that the BOP is obligated to treat these conditions. Now that's being used on one side to say it didn't really look into it, but I think it's also the court's assuming that they're going to do everything required of them and there's nothing in the record that says the BOP would not, is that it previously treated his condition. So the substance of- But did the court consider assuming that it looked at the seriousness of a condition? That's my question, that if it had looked at the seriousness of a condition, then ought not the court have thought about other ways of punishing this guy for what he did in violation? Because sending him to jail for six months, frankly to somebody who's been in jail for 16 years, if he were in good health, is not that big a deal of a punishment for violating. And there are other ways of punishing which, if the court had taken into account the seriousness of his condition, it might have thought were more appropriate. I think the request from the defendant was for home confinement, but I think the facts of the case specifically were the defendant was found with a large quantity of resale heroin in his own apartment, along with firearms and other things which he declaimed access. So I don't know that given the full totality that the idea that this person- Well, but there are other things like doing good works, doing certain things, which might be more of a punishment, more of an imposition. And my question is just whether the court was in a position of having looked at all the medical dangers to decide that. That isn't saying that what it did was substantively wrong. No, I'm not there at all. Okay, so just to go back, again, I would reiterate on the procedural piece, I do think the district court had ample evidence before it, again, regarding the prior conditions Mr. Shue experienced when incarcerated, and it definitely considered that hardship going forward, but ultimately determined that someone who is now back before the court for this kind of conduct, there just had to be some sort of punishment. So I don't think the court's consideration here disregarded or didn't take into account appropriately under the procedural prong his conditions or how incarceration could exacerbate them or how confinement could affect them. So other than that, I have nothing else unless Your Honors have any questions. Thank you. Thank you. I would just say given that the district court took Mr. Shue and his attorney at their word, and I believe the government did too, everyone recognized that it was a significant serious condition, and as Mr. Maffei mentions, when there was an application for a remand and it was well understood that there would ultimately be a guilty plea because he'd already pleaded guilty in state court, based on the medical conditions the court did not incarcerate him at that time, and I would just say that accepting the medical condition as valid and having not inquired further into it, it's something of a non-seconder to say, I'm going to respond to this concern by giving you six months instead of nine months. Given those concerns, the question was whether this is someone who should spend any time at all in a prison environment. Counsel, there are myriad conditions that are serious, can become serious, or can turn serious, high blood pressure, liver failure, sleep apnea, things that can kill you. In many instances, people are better off if they have such an attack. Being in jail, where people are observing what you're doing and where doctors may even be present all the time as opposed to in somebody's home where if you can't reach the telephone, you can just die on the floor. So, I mean, I don't understand why it's simply assumed that people with dangerous conditions can't go to jail if the judge is aware of the condition and properly instructs that measures should be taken. Well, Your Honor, this isn't on the record, but my personal experience is that it is very difficult to get medical care, to see a specialist. Yeah, but are you saying seriously that people who have medical conditions cannot be put in jail unless they are people who are dangerous outside? I mean, that's a dramatic statement. If we rule for you on the substance of it, we are saying essentially that a person who can get bail should never be put to jail if he could have a serious medical condition. Now, that's different from saying, have they looked at this person's specific condition and is it so serious as to be unusual? But the substantive claim you're making is awfully dramatic. Well, I'm not making as broad a claim as that. In this particular case, with the particular combination of circumstances, the particular needs for ongoing visits with a neurologist, with multiple different kinds of specialists, with having the medication administered, and with the risk of a complication not being addressed quickly enough basically to save his life, I think this is not a typical case of someone who has medical problems that are not that different from a lot of people's. This is not a typical case, and under these facts, the sentence was not reasonable. Thank you both, and we will take the matter under advisement.